W. J. SMITH, *alias* TOM SMITH, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Opinion Filed December 17, 1923.

1. Where a person, in order to consummate a sale of real estate, represents that 'the property is free and there is nothing against it' when in fact he had previously joined with his wife in executing a mortgage on the property, which mortgage was then in existence, unpaid and uncancelled, and was a valid and existing lien upon the property, all of which he knew at the time of the alleged representation, it constitutes a false pretense within the meaning of Section 5155, Revised General Statutes, 1920, for which he would be criminally liable if he obtained from another any money or other property, thereby.

2. Where money is obtained by falsely representing that there is not existing on the real estate for the purchase price of which the money is paid, any encumbrance, it is no defense that the party deceived, relied upon the statements made without examining the public records.

3. Testimony examined and found entirely to fail to prove that William J. Smith, the plaintiff in error, received any part of the money that Johnson gave the check or checks for, or that he received any other money, parted with by either of the Johnsons, which he is charged with having obtained under false pretenses.

This case was decided by Division A.

A Writ of Error to the Circuit Court for Jackson County; C. L. Wilson, Judge.

Judgment reversed.

*H. V. McClellan,* for Plaintiff in Error;

*Rivers Buford,* Attorney General, and *M. C. McIntosh,* Assistant Attorney General, for the State.

BROWNE, J.—William J. Smith and his wife, Rhoda C. Smith, were jointly indicted for obtaining from Noah Johnson $200.00 by a false pretense. The proof on the part of the State shows that the plaintiff in error falsely represented to Noah Johnson that certain land which Mrs. Smith and her sister, Mrs. T. F. Brantley, sold to him was free from all incumbrances, when in fact Mrs. Smith, joined by her husband, had previously executed and delivered to one Thos. E. Walker a mortgage for $250.00 on her undivided interest in the land, and that when the trade was made and Noah Johnson paid $200.00 on account of the purchase price, this mortgage was valid, unpaid, and outstanding and an incumbrance upon the land.

Rhoda C. Smith and her sister, Marion E. Brantley, each owned an undivided half interest in the property, and joined by their husbands, executed a deed to Noah Johnson, for a consideration of eighteen hundred dollars.

William J. Smith, plaintiff in error, was convicted, and Rhoda C. Smith, his wife, acquitted.

It is contended by the plaintiff in error that because the mortgage to Walker from Mrs. Rhoda C. Smith and her husband was on record in Jackson county, where the land was situated and the $200.00 paid, it was the duty of Noah Johnson to examine the public records to ascertain the

truth, and that by doing so he could have discovered that there was an existing mortgage on the property.

This raises the question: does a false representation that certain real estate is unincumbered by a mortgage which is on record, come within the provisions of Section 5155, Revised General Statutes, 1920, relating to obtaining money under false pretenses, where the purchaser pays money upon the faith of such representation, when by examining the public records he could ascertain the truth or falsity of the representation?

Reliance is placed on a citation by this court in the case of Walker v. State, 68 Fla. 278, 67 South. Rep. 94, to this effect: " 'Where the pretense relied on to support the crime is absurd or irrational or such as the party injured had at hand at the very time the means of detecting it does not constitute a criminal offense.' "

This must be taken in connection with the facts in the case then under consideration, which are not sufficiently similar to those in the instant case to make that decision authority in this.

That quotation, which is cited in quite a few reports and variously credited, seems to have originated in Commonwealth v. Hutchinson, a Pennsylvania case reported in 2 Parsons Select Equity and Law Cases, 313. This is an early American case and contains an interesting discussion of the early English cases; among them, that of King v. Codrington, 1st Car. & Payne, 661, 12 English Common Law, 375, decided in 1825, where it was held that: "If one professes to sell an interest in property, and receives the purchase money, the vendee taking the usual covenant for title, and it turns out that the vendor has in fact previously sold his interest in the property to a third person, this is not sufficient to support an indictment for obtaining money by false pretences."

Conceding that such is still the law in England, it is not entirely applicable to the case under consideration. In the English case the only false pretense relied on was the covenant contained in the deed. In the instant case in addition to the covenant in the deed, there is testimony that the plaintiff in error gave verbal assurance that the property ''was free and there was nothing against it.''

Since the case of King v. Codrington, *supra,* was decided, there seems to have been a gradual departure both in England and the United States, from the rule in that case, until now the courts generally hold that the defendant's guilt does not depend upon whether the victim, by reasonable diligence, could have ascertained that the representations were false.

In the English case of Queen v. Coulson and Rusting, 1 Denison's Crown Cases, 592, decided in 1850, it was held that where a person offered a ''false note'' in payment under the pretense that it is a Bank of England note, and receives money or property on it, it is a false pretense within the statute; notwithstanding the injured party had at hand the means of determining the truth or falsity of the representation.

In the case of Reg. v. Jessop, decided in 1858, 4 Jurist (N. S.) 123, 7 Cox Crim. Cases, 399, the defendant bought a glass of beer at an inn and presented a one pound bank of Ireland note, and said that he wanted ''this five pound note changed.'' The girl who waited on him received the note and handed it to her mother open, who gave the accused the change after taking out for the glass of beer. It was contended that ''the prosecutrix had means of detecting from the face of the note itself that it was not a 5 L. note by using common prudence and caution; that she had at the time the means of detection, and need not have been deceived.'' But Lord Chief Justice Campbell said, ''In

many cases a party giving change would not look at the note offered, but would rely on the representations made at the time. Here there was a false pretense, and by means of it the money was obtained.''

In Kentucky it has been held that where the means of detection are at hand by the examination of the public records, a conviction for obtaining money by false pretenses could not stand. The court saying, ''for by a visit to the Clerk's office, he could soon have ascertained whether the appellee had the unincumbered title to the house and lot as represented by him.'' Commonwealth v. Grady, 13 Bush. (Ky.) 285.

In a later case, however, the court held that the victim of such fraudulent pretenses need not go to a distant city to make inquiry, nor was it essential that he should have telegraphed or written concerning the matter. ''If victims of such frauds as averred in this indictment, or victims ·of those who obtain money or property by false pretense, are compelled to exhaust every effort to ascertain whether the party is attempting to practice a fraud, rarely an offense could be committed of obtaining money under false pretenses, or one under the statute in question; for in most every case the party upon whom the fraud is attempted to be practiced, if he employs sufficient energy and time, can ascertain beforehand the purpose of one who is attempting to perpetrate a fraud.'' Commonwealth v. Scroggin, 22 Ky. L. 1338, 60 S. W. Rep. 528.

The rule announced in Commonwealth v. Grady, *supra,* seems to prevail in Tennessee. See Chapman v. State, 2 Head (Tenn.) 36; McCorkle v. State, 1 Coldw. (Tenn.) 333; State v. DeHart, 6 Baxter (Tenn.) 222.

In other States, however, it has been held that where money is obtained by falsely representing that there is not existing on the real estate upon which the money is raised,

any encumbrance, it is no defense that the party deceived relied upon the statements made, without examining the public records. State v. Hill, 72 Me. 238; Thomas v. People, 113 Ill. 531; Miller v. People, 22 Colo. 530, 45 Pac. Rep. 408; State v. Munday, 78 N. C. 460; Jenkins v. State, 97 Ala. 66, 12 South. Rep. 110. See also notes to State v. Kays, 7 Am. & Eng. Ann. Cas. 34.

We think the representation made by Mr. Smith that "the property was free and there was nothing against it" when in fact he had previously joined with his wife in executing a mortgage on the property, which mortgage was then in existence, unpaid and uncancelled, and was a valid and existing lien upon the property, all of which he knew at the time of the alleged representation, constituted a false pretense within the meaning of Section 5155, Revised General Statutes, 1920, for which he would be criminally liable if he obtained from another any money or other property, thereby.

The next question to be determined is, did the plaintiff in error receive any money or other property by means of the false pretense?

The testimony is conclusive that the $200.00 the plaintiff in error is alleged to have obtained by false pretenses, was paid by the Bank of Marianna upon a check or checks drawn by W. J. Johnson, the father of Noah Johnson. Johnson is uncertain whether he gave one check for $200.00 or two checks for $100.00 each. He is quite positive that the amount that he draw a check or checks for was $200.00, but when asked whether it was in one check or two, answered: "I could not say positively, I think it was one check, but I could not say positively." When asked, "As a matter of fact, wasn't one check made to Mrs. Brantley and one check to Mrs. Smith?" he replied, "I could not say positively, I remember making a check for $200.00." On

re-direct examination, he was asked, "But you do know that it was $200.00, whether in one check or two," and replied, "I do know it was $200.00."

Noah Johnson was not positive to whom he delivered the check. He says, "I would not be positive, but I think I delivered the check to Mr. Smith; I gave the check to Mr. Smith and Mrs. Brantley."

No effort was made on the part of the State to prove who received the money for which the check or checks were given. The testimony is conflicting as to whom the check was delivered, but this is immaterial, as it does not appear that Smith received any of the money for which the check or checks were drawn.

The receipt of the money was one of the essential elements of the offense ,and it was necessary to prove that the accused received or used it, before he could be convicted.

Mr. and Mrs. Smith and Mrs. Brantley were at Johnson's when the checks were drawn and .delivered, and they testified that the check Mrs. Smith received was for $100.00 payable to Mrs. R. C. Smith.

Mrs. Brantley testified that she received from Johnson a check for $100.00 for her half of the first payment of $200.00 on the purchase price of the land. Smith testified that Mrs. Brantley received the check for his wife's half of the $200.00 and delivered it to her.

It is uncontradicted that the $100.00 which was Mrs. Rhoda C. Smith's part of the $200.00 paid on the purchase price of the land, was paid by check, and the duplicate deposit ticket of the Bank of Blountstown shows that it was deposited to the credit of Mrs. R. C. Smith.

There is not a particle of testimony that the plaintiff in error received any part of the $200.00 as charged in the indictment. The check or checks representing the $200.00 that W. J. Johnson paid for his son were not produced,

Johnson testifying that "he did not have the check, but had searched for it and could not find it."

It is uncontradicted that the land about which it is alleged the false representations were made belonged to Mrs. Brantley and Mrs. Smith; that one half of the $200.00 for which the check or checks were given, was received by Mrs. Brantley and the other half by Mrs. Smith; that Mrs. Smith deposited the $100.00 received on the check, to the credit of her personal account in the Bank of Blountstown. That is all the testimony there is in the record, as to who received the money derived from the check or checks for $200.00 that Noah Johnson was induced to part with as the result of the false representation.

There is a total failure to prove that Wm. J. Smith, the plaintiff in error, received any part of the $200.00 that Johnson gave the check or checks for, or that he received any other money parted with by either of the Johnsons. Not only that, but it affirmatively appears from the undisputed testimony, that Mrs. Brantley and Mrs. Smith received the entire $200.00.

The judgment is reversed.

Taylor, C. J., and Ellis, J., concur.

Whitfield, P. J., and West and Terrell, J. J., concur in the opinion.